116  324
f119  396

ROGERS *v.* VILLAGE OF ORION.

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—NOTICE.
    Notifying a member of the street committee of a village of a loose plank in a sidewalk, without specifying the location, is not sufficient to charge the village with notice of the defect.

2. PERSONAL INJURIES—ACTION BY MARRIED WOMAN—DAMAGES—PHYSICIAN'S SERVICES.
    In an action by a married woman for personal injuries, a recovery cannot be had for the services of a physician, where there is no testimony that she has paid or has promised to pay him therefor.

3. WITNESSES—OPINION. EVIDENCE.
    The opinion of a witness that a sidewalk in front of the premises of a railroad company was rebuilt because it needed rebuilding is inadmissible, where witnesses in the employ of the company have testified that the walk was in sound condition, and was rebuilt because of a change in grade.

4. EVIDENCE—PROBABILITIES.
    In an action against a village for injuries caused by a defective sidewalk, it is competent for defendant to show that it was the duty of one of its witnesses to look after the walk in question, as bearing upon the probability of his having made the examination testified to by him.

Error to Oakland; Smith, J.   Submitted February 4, 1898.   Decided March 15, 1898.

Case by Jennie Rogers against the village of Orion for personal injuries.   From a judgment for plaintiff, defendant brings error.   Reversed.

*A. & S. H. Perry*, for appellant.

*Joseph H. Holman* (*Fred A. Baker*, of counsel), for appellee.

GRANT, C. J.   Plaintiff recovered verdict and judgment for damages claimed to have been received on account of a defective sidewalk.

1. In order to show notice on the part of the defendant, plaintiff introduced one Russell, who testified that, before the accident to plaintiff, he also had fallen over a loose plank, and was afterwards shown the plank where plaintiff fell, and that it was at the same place. He testified that, the next morning after he fell, he went to one Kessel, who was a member of the street committee. His testimony on direct examination is as follows:

"I notified him the morning of the 27th.   It was in the evening that I fell, but I didn't see him until the next morning.   I knew he kept the books there.   He was always there when the council board met.   I went there for the purpose of notifying him.   I told him,—I explained to him that I had fallen, and come near breaking my neck; and, of course, I didn't use the bad words I used when I fell, but I told him that if my wife ever passed over that sidewalk, and she would get hurt over it, that I would make somebody pay dear for it.   He didn't say anything at all to me in reply."

On cross-examination he testified:

"I told him that, if my wife should fall, I would make somebody pay dear for it.   That's what I told him right there, sir.   That's the question asked between him and me.   That was all the conversation there was.   The substance of what I said was: 'Mr. Kessel, there is a loose plank up here, and, if my wife should fall over that, why, I would make the city pay dear for it.'"

He also testified that he did not know the name of a single street in the village. This testimony was left to the jury as evidence of notice. Mr. Kessel positively denied any such conversation. The judge instructed the jury that, if the testimony of Russell were true, this was notice to the village. There is nothing in the testimony of the witness Russell to show that he notified Kessel where the loose plank was. If Russell had testified that he told Kessel what the defect was, and the spot where it was, and it was the same one that caused plaintiff's injury, there would have been no error in the charge.

2. The court erred in directing the jury that plaintiff could recover for the services of the physician. There was no testimony to indicate that she had paid or had promised to pay him. She was therefore under no legal duty to pay him. *State* v. *City of Detroit*, 113 Mich. 643.

3. The railroad company, in front of whose premises was this walk, rebuilt the walk some months after the accident. On cross-examination of one Blanchard, a witness for defendant, he was permitted to answer the following question: "Well, it was rebuilt because it needed rebuilding, wasn't it?" Witnesses in the employ of the railroad company had testified that the walk was in sound condition, and that it was rebuilt because of a change in grade. The opinion of the witness as to the reason for rebuilding was incompetent.

4. One Farrell, the station agent at the railroad depot, testified as to the condition of the walk, and his examination of it. Defendant offered testimony to show that it was one of the duties of Farrell to look after this walk, and this was excluded. The avowed purpose was to show the reason for his making the examination. If it was his duty to make it, that fact bears upon the probability of his having done so. The jury would have a right to infer that it was probable he did make it if that duty was imposed upon him. It is always proper to show reasons and opportunities for such examinations.

We are not prepared to say that the last two errors alone were so prejudicial as to justify a reversal of the case. We decide them, inasmuch as the questions may arise upon a new trial. We find no other errors.

Judgment reversed, and new trial ordered.

HOOKER and LONG, JJ., concurred with GRANT, C. J. MONTGOMERY and MOORE, JJ., concurred in the result.